CHARLES VICTOR SAMPSON, PETITIONER-RESPONDENT,
v. CHARLES F. THORNTON, RESPONDENT-APPELLANT.

Argued January 14, 1952—Decided January 28, 1952.

*Mr. Roland Vreeland* argued the cause for appellant (*Mr. Gerald T. Foley,* attorney).

*Mr. Russell Fleming* argued the cause for respondent (*Mr. St. Elmo Ferrara,* attorney).

The opinion of the court was delivered by
WACHENFELD, J.  This case arises under the Workmen's Compensation Act and turns upon the narrow issue as to

what constitutes medical treatment such as to bring it within the classification of a "payment of compensation" according to the meaning of the act. The question as presented apparently has not previously arisen in this jurisdiction.

The facts are undisputed. On October 19, 1946, while in the employ of the defendant and engaged in performing his duties as such employee, the petitioner was thrown from a tractor, injured and rendered unconscious. He regained consciousness five hours later in the hospital, where, in consequence of the injuries received, he remained for three weeks. During this period the defendant visited the petitioner and told him he had nothing to worry about, that the accident was covered by insurance which "would take care of it."

A representative of the employer's insurance carrier also visited the petitioner at the hospital and told him: "You will get compensation until you can do light work, then you will be paid in a lump sum for suffering and damages."

The petitioner relied on these statements and sought no independent medical advice, depending entirely upon the undertaking by the insurance carrier to furnish the necessary medical, surgical and other treatment and the hospital services.

Dr. Barber, who was employed and paid by the insurance company, sutured the petitioner's head wound, an operation requiring nine or ten stitches, and thereafter visited the petitioner daily during his three weeks' stay in the hospital. Part of the treatment consisted of 62 penicillin shots, presumably administered under the direction of Dr. Barber as the treating physician. After leaving the hospital, the petitioner went back to Dr. Barber on several occasions for treatment for other resulting injuries to his eye and to his mouth, which was drawn to one side by the gash in his head, for severe headaches and a mastoid condition which the testimony suggests was caused or aggravated by the accident.

While still in the hospital, he was examined by a Dr. Fitch, also employed and paid by the company. On instructions

from an insurance company representative, he called at Dr. Fitch's office after his discharge from the hospital. These visits were concededly for treatment the nature of which is not disclosed by the record. On two other occasions, January 8 and May 13, 1947, at the instigation of the insurance company, the petitioner visited a Dr. Sherman and there is evidence that on these visits drops were placed in his eyes to test or correct a visual condition resulting from the accident and he was subjected to several tests to determine his physical condition.

The petitioner filed no claim but, by agreement, was paid compensation for temporary disability from October 19, 1946, to December 30, 1946, at the rate of $25 per week. In addition, he was paid $137.50, representing compensation at the rate of one per cent of total for permanent disability. The payment was made by check dated June 3, 1947, and was the last money payment made to the petitioner.

In April, 1948, he wrote the respondent's insurance carrier informing it that he felt he had not received adequate compensation for his injuries and pointing out he would give the company an opportunity to make some further adjustment before turning the matter over to his counsel. He stated in the letter that his eye was "not right yet" and "I also get great pains in my head at times."

A few weeks later, the carrier's representative called on the petitioner and informed him that he had gotten all he was entitled to but the representative would see if he could obtain additional compensation for him. Nothing further was heard concerning it until the carrier arranged with Dr. Sherman for a new physical examination, which was made on June 11, 1948. On this date no therapeutic treatment was undertaken nor were medicines, remedial exercises or other specific remedies proposed.

No further relief was granted on the petitioner's demand for increased compensation and in July, 1949, he filed a claim therefor. The Division of Workmen's Compensation held the examination by Dr. Sherman constituted medical

treatment and, after hearing, awarded additional compensation in the amount of $257.14 for 10 2/7 weeks for temporary disability, and permanent disability of 35 per cent of total, amounting to $4,812.50 less the $137.50 already paid.

The Hunterdon County Court reversed the Division, holding the visit of June 11, 1948, was merely an examination of an injured employee by a physician engaged by the employer's insurance carrier and did not constitute medical treatment such as would toll the running of the two-year limitation provided in R. S. 34:15–51.

On appeal, the Appellate Division reversed the County Court and reinstated the award made by the Division of Workmen's Compensation, holding that under the circumstances the visit of June 11 was a treatment and as such constituted a partial payment of compensation. Since the claim for increased compensation was filed within two years of the date of that visit, the Appellate Division found it came within the statutory time limit.

The case is before us upon our granting certification to the Appellate Division.

The only workmen's compensation claim filed by the petitioner for the injuries resulting from this accident is the one presently under consideration, the earlier payments having been made by agreement of the parties. R. S. 34:15–51 provides the petition must be filed "within two years after the date on which the accident occurred * * * or in case a part of the compensation has been paid by the employer, then within two years after the last payment of compensation."

It has been held many times in this jurisdiction, and the appellant concedes, that medical treatment when furnished and paid for by the employer is a part payment of compensation within the meaning of the act and so a claim may be filed within two years thereafter. In Oldfield v. N. J. Realty Co., 1 N. J. 63 (1948), although decided on other grounds, Justice Case expressed the rule in these words:

"We are of the opinion that the furnishing of medical treatment is in the nature of compensation and that it is the act of furnishing that attention which is given priority in the first part of *R. S.* 34:15–16."

Here the claim was filed within two years of the visit to Dr. Sherman on June 11, 1948, although more than two years after the last previous medical aid. The query, therefore, is whether the final visit and the medical examination which then took place constitute, under the existing circumstances, a treatment which, according to the above cases, is a part payment of compensation such as to extend the time for the filing of the claim.

A mere examination by an insurance carrier to ascertain the condition of an injured employee solely for the purpose of determining the existence, nature and extent of disability is not a medical treatment. Such an examination standing alone is no indication the carrier has undertaken the obligation to make compensation and to assume his medical care. *Garden Farm Dairy v. Dorchak,* 102 *Col.* 36, 76 *P. 2d* 743 (*Sup. Ct.* 1938); *Hunt v. Industrial Accident Commission,* 43 *Cal. App.* 373, 185 *P.* 215 (*1st App. Dist.* 1918).

In the case *sub judice,* however, the circumstances, we think, bring about a different result. The insurance company had recognized the injury as compensable and had specifically assumed the obligation to furnish the required medical and hospital treatment to the petitioner. It had employed and paid doctors for this purpose, of whom Dr. Sherman was one. All visits by the petitioner to him were made at the instance of the insurance company pursuant to arrangements made by it. The first of these visits was made while or immediately following the time the petitioner was still under the care of and undergoing treatment by other doctors employed by the carrier. It, to all appearances, was part of a course of medical treatment the carrier thought necessary and had undertaken to furnish and which the petitioner had accepted.

When, in April, 1948, the petitioner complained to the carrier that he still had not fully recovered from the effects of the accident, it was again the insurance company which thereafter arranged for him to make another visit to Dr. Sherman. So far as appears, this could be construed as an extension of the course of treatment which he had already undergone. He had been examined and treated by two other doctors designated by the company and had twice previously been sent to Dr. Sherman. He was not informed to the contrary nor was he advised that the course of treatment had ceased and the last visit was entirely for the benefit of the insurance company and merely for the purpose of a limited examination to determine the validity of his further claim. Quite the reverse seems true. The company agent promised he would try to get additional compensation for the petitioner and the next communication from the company directed him to report once more to Dr. Sherman.

This is not analogous to the situation developed in *Thompson v. Swenson Construction Co., 158 Kan. 49, 145 P. 2d 166 (Sup. Ct. 1944)*, where the employee visited a doctor under written instructions received from the insurance company as follows:

"It is requested you appear at your earliest convenience at the office of W. J. Feehan * * * for an examination only of your left leg and ankle. You understand that we are not nor Dr. Feehan at this time tendering or rendering any form of treatment. This visit to Dr. Feehan for this examination is therefore independent of any treatment we may have rendered you in the past."

Apparently anticipating that the visit with Dr. Feehan would be considered a treatment because of the past services which he had rendered, the company specifically negatived such a conclusion by expressly stating to the contrary in its written instructions.

No such course was pursued in the case *sub judice*. In the absence of it and in the light of the entire history of the case, it appears the arrangement by the carrier to have the petitioner again consult Dr. Sherman was a continuation

and an integral part of the course of treatment which the carrier had been providing.

The record does not, without notice, justify differentiating this one visit from the series of similar medical consultations admittedly embracing treatments provided by the insurance company. It is not to be considered in the abstract but in its propinquity to the previous course of conduct and surrounding circumstances.

The mere fact that Dr. Sherman did not on June 11 prescribe any medicines or other remedial action is not dispositive. He testified: "This is the kind of a case where, if I haven't forgotten my Latin, *medicatus naturi* steps in and the patient needs very little if any medical treatment." There is no less reliance placed upon a doctor's professional skill and knowledge in passively following his recommendation in this respect than there would be in actively undergoing a rigorous course of medical or surgical treatment on his advice. It is common knowledge that a patient, in the course of a long convalescence from an injury or disease, may make many visits to a doctor in which no specific curative action is taken. Observation and tests by the doctor to determine the patient's physical condition and the progress of his recovery are as much a part of the course of treatment as are the specific remedies applied.

In *Seville v. U. S.,* 163 *F. 2d* 296 (*C. C. A.* 9, 1947), the court said:

"The term 'medical treatment' should be deemed to include the advice to do nothing with a sprain or a fractured limb for a certain period and the following of such advice."

Medical examinations which are part of a whole course of treatment were embraced within the definition of the latter term in *Hester v. Ford,* 130 *So.* 203 (*Sup. Ct. Ala.* 1930), in these words:

"In common parlance and often in the law, 'treatment' is the broad term covering all the steps taken to effect a cure of the injury or

disease; it includes examination and diagnosis as well as application of remedies."

The Workmen's Compensation Act should be liberally construed to effectuate its purpose. A careful study of the record before us and a consideration of the circumstances and facts therein narrated and the logical inferences to be drawn therefrom, compel us to conclude that the petitioner's visit to Dr. Sherman on June 11, 1948, was part of the medical aid supplied and constituted a treatment making it compensation to the injured employee within the meaning of *R. S.* 34:15–51. The petitioner's claim having been filed within two years of that date, it follows that it was within time.

The judgment below is affirmed.

*For affirmance*—Justices HEHER, OLIPHANT, WACHENFELD and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE and BURLING—3.