29 N.J. Super. 374 (1954)
102 A.2d 678
JOHN J. SCHWARZ, PETITIONER-RESPONDENT,
v.
FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLANT, AND EMILY NIXON SCHWARZ, PETITIONER-RESPONDENT,
v.
FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1953.
Decided January 19, 1954.
*375 Before Judges CLAPP, GOLDMANN and EWART.
Mr. John J. Monigan argued the cause for respondent-appellant (Messrs. Stryker, Tams & Horner, attorneys; Mr. William L. Dill, Jr., of counsel).
Mr. Mortimer Wald argued the cause for petitioners-respondents.
The opinion of the court was delivered by GOLDMANN, J.A.D.
This appeal involves two workmen's compensation claim petitions. The first, filed by decedent *376 John J. Schwarz in his lifetime on February 7, 1947, sought recovery of benefits from the Federal Shipbuilding and Dry Dock Company for permanent disability allegedly resulting from an accident which occurred on November 2, 1943. On that date Schwarz, assisted by a fellow-worker, was attempting to turn over a transom locker when it fell, striking him in the groin and testicles and pinning him to the floor. The second petition was filed by his widow on August 26, 1947, seeking to recover dependent's benefits by reason of her husband's death on June 3, 1947. The two petitions were consolidated for trial. The Workmen's Compensation Division upheld the claims, as did the County Court on appeal.
Appellant employer does not raise the question of causal relationship between decedent's employment and the injury and ensuing death. It claims that the Division lacked jurisdiction to entertain the petitions because neither was filed within the time prescribed by R.S. 34:15-41 and R.S. 34:15-51. R.S. 34:15-41 provides that
"In case of personal injury or death all claims * * * shall be forever barred unless a petition is filed * * * as prescribed by section 34:15-51 * * *."
R.S. 34:15-51 requires that
"Every claimant for compensation * * * shall * * * file a petition in duplicate with the secretary of the bureau * * * within two years after the date on which the accident occurred, or in case an agreement for compensation has been made between the employer and the claimant, then within two years after the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been paid by the employer, then within two years after the last payment of compensation. Any payment made in accordance with the provisions of article 2 of this chapter (§ 34:15-7 et seq.) shall constitute an agreement for compensation. * * *"
The filing of a petition within the time prescribed by these sections is a jurisdictional requirement and a petitioner must establish compliance therewith. Valentine v. Walter Kidde & Co., 136 N.J.L. 292 (Sup. Ct. 1947). *377 The jurisdiction of the Workmen's Compensation Division cannot be enlarged by consent, waiver, estoppel or judicial inclination. Riccioni v. American Cyanamid Co., 26 N.J. Super. 1 (App. Div. 1953).
More than two years elapsed between the date of the accident on November 2, 1943 and the filing of the claim petition by decedent on February 7, 1947. Since there was no agreement to pay workmen's compensation benefits under R.S. 34:15-50, the only basis for holding that the Division had jurisdiction is that the physical examination of decedent by Dr. Koppel on March 1, 1945 (hereinafter described) was a payment of compensation within the meaning of R.S. 34:15-51 and therefore extended the time for filing the petition.
Medical treatment furnished and paid for by the employer is considered a part payment in the nature of compensation within the meaning of the act, and a claim may be filed within two years thereafter. Betsy Ross Ice Cream Co. v. Greif, 127 N.J.L. 323 (Sup. Ct. 1941); Donoher v. American Steel & Wire Co., 2 N.J. Super. 72 (App. Div. 1949). And see Oldfield v. New Jersey Realty Co., 1 N.J. 63, 67 (1948).
Both the deputy director and the County Court judge determined that decedent's claim petition was filed within time by reason of the decision in Sampson v. Thornton, 8 N.J. 415 (1952). We do not agree; decedent's claim does not fall within the frame of that decision.
In the Sampson case a Dr. Barber, employed and paid by respondent's insurance company, visited and treated petitioner during his three weeks' stay at the hospital. He also gave him a number of treatments after discharge. Petitioner then, and at the direction of the carrier, made several visits to the office of another of its physicians, a Dr. Fitch, who had examined him in the hospital. These visits were concededly for treatment, the nature of which was not disclosed by the record. On two other occasions petitioner, again at the instance of the insurance company, visited a Dr. Sherman who put drops in his eyes and tested him for *378 his physical condition. Though petitioner filed no claim, compensation was paid him by agreement for temporary disability from October 19, 1946, the date of his injury, to December 30, 1946. He was also paid 1% of total for permanent disability on June 3, 1947. In April 1948 petitioner wrote the insurance carrier claiming he had not received adequate compensation. A representative called and informed him that he had gotten all he was entitled to, but promised he would see if additional compensation could be obtained. The carrier then arranged for a new physical examination by Dr. Sherman. It took place June 11, 1948. No treatment was given or medicines, remedial exercises or other specific remedies prescribed. Petitioner thereafter filed his claim for increased compensation in June 1949, more than two years after the accident. The Supreme Court, by a vote of 4 to 3, determined he was entitled to compensation. Speaking through Justice Wachenfeld the majority held (at pages 420-421):
"A mere examination by an insurance carrier to ascertain the condition of an injured employee, solely for the purpose of determining the existence, nature and extent of disability, is not a medical treatment. Such an examination standing alone is not an indication that the carrier has undertaken the obligation to make compensation and to assume his medical care. * * *
"In the case sub judice, however, the circumstances, we think, bring about a different result. The insurance company had recognized the injury as compensable and had specifically assumed the obligation to furnish the required medical and hospital treatment to the petitioner. It had employed and paid doctors for this purpose, of whom Dr. Sherman was one. All visits by the petitioner to him were made at the instance of the insurance company pursuant to arrangements made by it. The first of these visits was made while or immediately following the time the petitioner was still under the care of and undergoing treatment by other doctors employed by the carrier. It, to all appearances, was part of a course of medical treatment the carrier thought necessary and had undertaken to furnish and which the petitioner had accepted."
The court went on to state (at pages 421-422):
"So far as appears, this [the June 11, 1948 visit to Dr. Sherman arranged by the insurance company] could be construed as an extension of the course of treatment which he had already undergone. *379 He had been examined and treated by two other doctors designated by the company and had twice previously been sent to Dr. Sherman. He was not informed to the contrary nor was he advised that the course of treatment had ceased and the last visit was entirely for the benefit of the insurance company and merely for the purpose of a limited examination to determine the validity of his further claim. Quite the reverse seems true. The company agent promised he would try to get additional compensation for the petitioner and the next communication from the company directed him to report once more to Dr. Sherman.

* * * * * * * *
"* * * [I]n the light of the entire history of the case, it appears the arrangement by the carrier to have the petitioner again consult Dr. Sherman was a continuation and an integral part of the course of treatment which the carrier had been providing.
The record does not, without notice, justify differentiating this one visit from the series of similar medical consultations admittedly embracing treatments provided by the insurance company. It is not to be considered in the abstract but in its propinquity to the previous course of conduct and surrounding circumstances."
The Sampson case is clearly distinguishable on its facts from the situation before us. In the present case decedent reported to the company dispensary directly after the accident on November 2, 1943, complaining of pain and swelling in the right testicle. A male nurse examined him and told him to come back the next day for an examination. He did, and the company physician had the nurse furnish him with a suspensory. Decedent continued to work although there was some pain. About a month and a half later he went to the plant hospital where he was seen by a number of doctors, among them Dr. Brozdowski. One of the doctors suggested "deep ray treatments" and referred him to a Dr. Duffy. None of the plant doctors treated him.
On January 27, 1945 decedent sought medical treatment from his own doctor, Dr. Wisnefski, who aspirated the scrotum. In a signed statement decedent said that Dr. Wisnefski had informed him he would treat the testicle for about a month, and if that did not help he would have to remove the testicle. Up to that time decedent thought he had "a possible hernia."
On January 29, 1945 decedent reported to the plant hospital and was examined by the company physician, Dr. *380 Obester. His finding, set out in the hospital record, was that there was a swelling of the right testicle, referred to as a "teratoma." The next entry on the hospital record is a notation on January 31, 1945 by William Leonard, the company's compensation representative, referring the case to Dr. Brozdowski for "final disposition." By separate note he asked the doctor for a diagnosis as well as his opinion as to causal relationship. The doctor's notation on the hospital card, dated February 1, 1945, describes the swelling of the testicle and recommends examination by a Dr. Daly for malignancy. There follows a notation of an appointment for an examination by Dr. Daly on February 5. In a separate note, Dr. Daly was asked to report his findings and diagnosis, as well as his opinion as to whether decedent's condition had any connection with the claimed injury. Following the examination the doctor reported to the company that he found a low grade chronic infection and suggested aspiration of the fluid and diathermy, adding that if not effective it might be necessary to operate and evacuate the clots, removing the epididymis; "it is quite possible it may be necessary to remove the testicle." Dr. Daly gave no medical treatment; decedent stated that he went merely for an examination "to see what was really the trouble with me."
Soon after, decedent reported to the compensation office of the company because his condition was growing worse and he was in pain. He was called to the office about a week later, on March 1, 1945. At first, he says, he was told that Dr. Daly "would take care" of his case, but then he was asked if he would mind being sent to "one more specialist." He said "no" and was given a sealed envelope addressed to a Dr. Koppel. He visited the doctor the same day and was examined. In his report to the company, Dr. Koppel said, among other things, that it was difficult to make a diagnosis without aspiration or surgical interference. He was inclined to the opinion that the case was one of either malignancy of the testicle or pathology of an inflammatory nature. He excluded any relation of the trauma to the pathology found. *381 "No doubt surgical interference will be indicated and if malignancy is found it is doubtful whether the removal of the testical will terminate and permanently cure the condition as secondary complications might arise. However, if the condition is one of inflammatory nature, surgical interference will relieve the condition."
Shortly after this examination, the company informed decedent that his case was not compensable and the company would not take the responsibility of treatment because there was no connection between the injury and his physical condition. He was advised that he would have to go under the care of his own doctor, and that the company had arrived at its decision on the basis of Dr. Daly's and Dr. Koppel's reports of their examinations. Decedent continued at his work, with interruptions due to pain, until early December 1946, a year and nine months later. He filed his claim petition on February 7, 1947, less than two years after Dr. Koppel's examination. Despite an amputation of the testicle, decedent died on June 3, 1947 from malignancy of the scrotum.
The facts of the instant case have been set out in some detail to show that the circumstances which led a majority of the Supreme Court in Sampson v. Thornton to hold that the petition there was timely filed are not present here. Appellant had never recognized the injury as compensable or made payments by way of compensation. Nor was compensation promised. Aside from the suspensory provided the day after the accident and such treatment as may have been given on visits to the plant hospital a month and a half or so later  and there is nothing in the record to show there was any  the company never assumed the obligation of providing medical and hospital treatment to decedent. The four doctors who saw him at the request of the company between January 29 and March 1, 1949  its own Doctors Obester and Brozdowski, and the two urologists, Dr. Daly and Dr. Koppel  did nothing more than examine him. By decedent's own admission, they neither treated nor prescribed for him; there was no course of medical treatment, *382 as in the Sampson case, nor a continuation (after the lapse of more than a year) of the single treatment given on November 3, 1943 when the suspensory was prescribed. None of the doctors told decedent that some course of treatment or surgery was indicated. Their reports were made directly to the company, and what they reported was not brought to the employee's knowledge.
Decedent was not led to believe that his employer was providing, or would provide, medical treatment. The petitioner in the Sampson case relied on representations made by his employer's insurance carrier and sought no independent advice, depending entirely upon the carrier's undertaking to furnish the necessary medical, surgical and other treatment and the hospital services. Not so here. Decedent's swelling had diminished and the testicle became almost normal a few weeks after the accident; a year later the swelling reappeared and the scrotum became three times its normal size. It was then that decedent consulted his own doctor. What Dr. Wisnefski did, and his statement to decedent that surgery might be necessary, has already been related.
We conclude that the examination by Dr. Koppel on March 1, 1945 was not a part payment in the nature of compensation within the meaning of R.S. 34:15-51. It did not extend the time within which the claim petition might be filed. The Workmen's Compensation Act should be liberally construed wherever possible, but that principle does not justify a complete disregard of the plain language of the statute.
The dependency claim of the widow falls with our determination that decedent's petition was filed out of time.
Judgment reversed.