30 N.J. Super. 72 (1954)
103 A.2d 396
EUGENE F. REILLY, PETITIONER-APPELLEE,
v.
CITY OF NEWARK, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 2, 1954.
*73 Mr. John W. O'Brien argued the cause for petitioner-appellee (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. Alfred Del Negro argued the cause for respondent-appellant (Mr. Horace S. Belfatto, attorney).
WAUGH, J.C.C.
The following facts in this case are not in substantial dispute.
Eugene Reilly, a paid uniformed fireman employed by the City of Newark, was injured in an accident arising out of and in the course of his employment on April 12, 1946, when he suffered multiple fractures as a result of a fall. During fire department practice Reilly fell 35 feet to a concrete floor when a rope snapped while Reilly was attempting to swing off a parapet and hook on to a fellow employee.
On the date of the accident Reilly was admitted to Newark Presbyterian Hospital, where he was visited by Dr. John N. Pannullo on behalf of the respondent. Dr. Pannullo referred petitioner to Dr. John J. Flanagan for treatment.
Dr. Flanagan thereafter treated petitioner during his stay in the hospital until August 9, 1946 and thereafter petitioner remained under Dr. Flanagan's active treatment until February 7, 1947, when he was discharged by Dr. Flanagan and he returned to duty on February 17, 1947 and was assigned light work. On September 21, 1948 petitioner returned to Dr. Flanagan, was reexamined and the doctor prescribed a three-quarter inch lift on the heel of the left *74 shoe and advised Reilly to discard the cane. Reilly returned again to Dr. Flanagan on November 16, 1948, at which time the heel lift was found to be satisfactory; and returned again on February 22, 1949, at which time and until April 7, 1949 the doctor administered 13 physio therapy treatments.
It further appears, but the effect of these facts as they relate to the statute of limitations are vigorously contested by the city, that Reilly received each year two pairs of corrective shoes of the type prescribed by Dr. Flanagan. These are paid for annually by the Firemen's Relief Association, about which more will be said hereafter.
The petitioner claims, but the city denies, that he was further treated for his injury by Dr. John Pannullo, city fire surgeon, in the year 1950, and by Dr. Adolph Wegrocki, assistant fire surgeon, in 1951, 1952 and until February 25, 1953.
The statement of Dr. Wegrocki's treatments, the doctor having died prior to the workmen's compensation hearing, was admitted into evidence without objection (R-1). Dr. Wegrocki treated Reilly 24 times for the injury suffered on April 12, 1946.
The method used by the City of Newark for the treatments rendered this and apparently other injured firemen, is quite unusual. Dr. Flanagan testified that his fees for services were paid in this case, and in others, by a corporation known as the Firemen's Relief Association (apparently of the City of Newark). Dr. Pannullo, the city fire surgeon, testified that when he treats an injured fireman he bills the Firemen's Relief Association. It appears affirmatively in this case that the association paid for the special shoes furnished twice yearly to the petitioner.
Emmett Matthews, Chief Clerk, Fire Division, Department of Public Safety, City of Newark, testified that the city paid no bills in this case to Dr. Flanagan, Dr. Pannullo, Dr. Wegrocki, or to the two X-ray specialists, Dr. Santoro and Dr. Corrigan, nor to Presbyterian Hospital. The inescapable inference is that all bills for treatment to *75 Reilly, and for that matter to other injured firemen, are paid for by the Firemen's Relief Association. Among other things, Chief Clerk Matthews was asked:
"Q. As Chief Clerk of the Fire Department would you know whether the Department has any authority whatever to prevent the payment of any bills by the Fire Relief Association involving firemen? A. They haven't.
Q. Could you tell us what this Firemen's Relief Association is? A. Why, it is a private corporation organized by an act of the legislature, and the primary reason for it is to pay any injuries or sickness or bills of a fireman hurt in the line of duty, and they receive their money from two per cent taxes placed on the fire insurance companies on business written in this State, on companies that are home offices out of the State."
Nothing could indicate more clearly that the city's chief clerk in charge of all records pertaining to the fire department knew that bills were being paid by the Firemen's Relief Association and, as he says, although incorrectly, "the primary reason for it (the Firemen's Relief Association) is to pay any injuries or sickness or bills of a fireman hurt in the line of duty." It is clear from the record in this case that the city fire surgeon, Dr. Pannullo, and his assistant, Dr. Wegrocki, were paid by the city to examine firemen reported ill or firemen injured at fires. Thereafter, all treatments are either at the patient's expense or at the expense of the Firemen's Relief Association, apparently without regard to whether or not the injury was compensable.
The Firemen's Relief Association in the City of Newark was set up by virtue of N.J.S.A. 43:17-1 et seq. The City of Newark argues that this is a private corporation which receives its money from insurance companies, in accordance with N.J.S.A. 54:17-2 and 54:18-1 and 2. The city argues further that it is a private corporation, unconnected with the city, and that, in effect, the actions of the association are no concern of either the city or the court.
A careful reading of certain sections of the act, to wit, N.J.S.A. 43:17-3, 43:17-31, 43:17-35, 43:17-46 and *76 43:17-47, would dispel this view, but that is of no particular moment here. The only question seriously contested by the respondent-appellant is that the statute of limitations provided for in R.S. 34:15-51 has run, and urges that any treatment after Dr. Flanagan's last authorized treatment on February 7, 1947, but in any event the treatment on April 7, 1949, is absolutely the last treatment that the city could be charged with; that all treatments by Dr. Pannullo and Dr. Wegrocki, and the furnishing of special shoes were, if done at all, done by the Firemen's Relief Association and were in no way binding upon the city. The deputy director who heard this case decided the question of the statute of limitations adversely to the City and allowed compensation of 30% of total. The city now appears and raises only the question of the statute of limitations.
I agree with the conclusions of the deputy director.
It is clear from the facts in this case that the city fire surgeon and his assistant, Dr. Wegrocki, knew of the practice of billing the Firemen's Relief Association for services rendered to petitioner and other injured firemen. Mr. Matthews, the Chief Clerk, Fire Division, Department of Public Safety, knew of the practice and that knowledge is imputable to the city. See Allen v. City of Millville, 87 N.J.L. 356 (Sup. Ct. 1915), and cases collected in Kelley v. Curtiss and Newark, opinion by Clapp, S.J.A.D., rendered January 21, 1954 and found in 29 N.J. Super. 291.
Further than this, under the facts in this case I find that the city having accepted the benefits of payment of bills properly chargeable to the City of Newark for services rendered to firemen injured in compensable accidents by the Firemen's Relief Association, is estopped from denying that treatments rendered by city officials, namely, the fire surgeon and his assistant, or that bills for orthopedic shoes paid for by the Firemen's Relief Association are the act of the city. The recent case of Vogt v. Borough of Belmar, 14 N.J. 195 (1954), is authority for the proposition that the doctrine of estoppel in pais applies to a municipal corporation.
*77 True, the court states at page 205 that:
"While not applied as freely against the public as in the case of private individuals, the doctrine of estoppel may be invoked against a municipality to prevent manifest wrong and injustice."
It should be invoked in this case.
Everything in this case indicates that to the knowledge of the City of Newark and its firemen, injured firemen were treated by the fire surgeon, referred to specialists by him and the bills paid by the Firemen's Relief Association. The city and its agents lulled Reilly into a false sense of security. True, the city did not have opportunity to invoke the reservation provided for in N.J.S.A. 34:15-16 which reads as follows:
"Where an employer * * * desires to pay for or furnish medical, surgical, or hospital treatment, drugs, orthopedic or prosthetic appliances, after the date when payments under section 34:15-12 and 34:15-13 of this Title have terminated, the employer * * * may, in writing, reserve the defense of the jurisdictional limitations * * * provided, that the reservation is approved by a deputy commissioner after advising the petitioner personally of his rights and of the effect of such reservation."
That it did not, was its own fault.
Having decided this aspect of the case adversely to the city, I hold that it follows that the city, in effect, furnished the medical services given by Dr. Pannullo and Dr. Wegrocki in the years 1951 to 1953 and that the case of Oldfield v. New Jersey Realty Co., 1 N.J. 63 (1948), is controlling. See also Donoher v. American Steel and Wire Co., 2 N.J. Super. 72 (App. Div. 1949).
I further find that the furnishing of the orthopedic shoes was in effect the act of the City of Newark. See Betsy Ross Ice Cream Co. v. Greif, 127 N.J.L. 323 (Sup. Ct. 1941), wherein it was held that the reimbursing of an employee for surgical belt and for bandages extended the time for filing of the petition. See also Riccioni v. American Cyanamid, 26 N.J. Super. 1 (App. Div. 1953), in which Judge *78 Jayne refers to the cases dealing with the furnishing of medical treatment and appliances as constituting the payment of compensation, and also the effect thereon of reviving the cause of action.
The findings of the deputy director are affirmed.
Counsel may submit an order in accordance with this opinion.