43 N.J. Super. 546 (1957)
129 A.2d 324
WILLIAM J. LYNCH, PETITIONER-APPELLEE,
v.
CITY OF NEWARK, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided February 7, 1957.
*548 Mr. William J. Straub argued the cause for petitioner-appellee (Mr. Joseph P. Dunn, attorney).
Mr. Alfred Del Negro argued the cause for respondent-appellant (Mr. Vincent P. Torppey, attorney).
FOLEY, J.C.C.
The respondent appeals from an award in the Workmen's Compensation Division of total and permanent disability.
It is conceded that on April 12, 1946 the petitioner suffered an accident which arose out of and in the course of his employment and that as a result he is totally and permanently disabled.
Resistance to the claim is founded upon a two-fold challenge to the jurisdiction of the Division. In the first place, it is urged that the claim is barred by the limitation set forth in the Workmen's Compensation Act, which provides:
"34:15-51. Claimant required to file petition within two years; contents. Minors.
Every claimant for compensation * * * shall * * * file a petition * * * within two years after the date on which the accident occurred * * * or in case a part of the compensation has been paid by the employer, then within two years after the last payment of compensation."
The chronology of the litigation follows:
December 21, 1948  Petition filed.
March 29, 1949  Discontinued with petitioner's consent.
August 6, 1949  Second petition filed.
May 8, 1949  Dismissed for lack of prosecution.
May 12, 1955  Present petition filed.
*549 The facts relevant to the problems presented are these:
The petitioner is and was, on April 12, 1946, a fireman employed by the City of Newark. On that day, in the course of his training program, he and another fireman were going down a rope. The rope broke and both plunged some 35 feet to a concrete walk. He was rendered unconscious and was taken to the Newark Presbyterian Hospital at the direction of Fire Surgeon Pannullo, a doctor employed by respondent. He remained in the hospital for 11 months, during which time he was treated by Drs. Pannullo, Flanagan, Mink, and Peer, after which he continued as an out-patient. When he left the hospital he was told by Dr. Pannullo to "come see me if anything happens." Thereafter an abscess developed and, heeding Dr. Pannullo's invitation, he consulted him. The doctor referred him to Dr. Mink who admitted him to the hospital in September 1947, where he remained until January 23, 1948. Shortly thereafter he developed a bladder infection, and resumed treatment under Dr. Mink until the doctor's retirement in 1952. The petitioner then placed himself under the care of Dr. Wheeler, who undertook treatment with the authorization of Dr. Pannullo. In March of 1953 Dr. Wheeler admitted him to the Presbyterian Hospital and later in the same month referred him to Dr. Lowsley of St. Clair's Hospital in New York City, where additional surgery was performed.
The respondent concedes that all of the treatment given, including 16 operations which were performed, was necessitated by the accident, and so I have not undertaken to describe it in detail. It is mentioned only for the purpose of depicting a chain of medical care extending from the date of the accident until a time well within the two-year period preceding May 12, 1955 when the present petition was filed.
The respondent concedes that where medical treatment, which could have been required under the Workmen's Compensation Act, is actually furnished by the employer, it is considered payment of compensation and a claim petition filed within two years of such payment is timely. R.R. *550 1:10-2(d); N.J.S.A. 34:15-41; Schwarz v. Federal Shipbuilding & Dry Dock Co., 16 N.J. 243 (1954).
However, respondent takes the position that no treatment was furnished by it at any time. This contention stems from a peculiar arrangement between the city and its firemen, whereby "The Firemen's Relief Association," a corporation authorized by R.S. 43:17-1, whose funds are derived solely from the imposition of a tax on fire insurance companies for its special purposes, pays all medical and hospital expenses of injured firemen whilst the city retains them on the municipal payroll at full salary, however they may be disabled. Dr. Pannullo was in the retention of the association as well as in the employ of the city. The latter asserts that his activities were undertaken in behalf of the Relief Fund only.
This practice, possibly of benevolent inspiration, was known to the petitioner, and it is inferable from the testimony that in foregoing the adjudication of his first and second petitions he may have been motivated by a desire to retain the benefits of full salary which were thus presented, at the same time obtaining medical attention. Likewise, it appears that the representative of the city in charge of workmen's compensation claims lent an encouraging voice to the arrangement. The equitable position of both parties is open to question in the circumstances outlined, and if the case were subject to the application of equitable doctrine both might be left to remain beyond the pale of the Workmen's Compensation Act, a position which they found to be mutually satisfactory for seven years. But the balancing of equities has no place in this dispute. The Workmen's Compensation Division is a purely statutory tribunal whose jurisdiction has been precisely defined by the Legislature. No equity jurisdiction was granted to it, if, indeed, any might have been conferred without offending against the Constitution of the State. As was said in Riccioni v. American Cyanamid Co., 26 N.J. Super. 1 (App. Div. 1953):
"The Workmen's Compensation Act should be liberally construed to effectuate its manifest purpose. * * * But it must be realized *551 that the Compensation Bureau is a creature of the statute and that its special and limited jurisdiction cannot be inflated by consent, waiver, estoppel, or judicial inclination."
The County Court in this instance is also a statutory tribunal whose jurisdiction is coextensive with that of the administrative agency, the decision of which it is constituted to review de novo.
In my view the payment of the medical bills by the Firemen's Relief Association is of no consequence. The question is, who furnished the medical treatment? Cf. Oldfield v. New Jersey Realty Co., 1 N.J. 63 (1948). The obligation to furnish the treatment was placed upon the city by the statute. And this duty was said in Panchak v. Simmons Co., 15 N.J. 13 (1954), to include the burden of ascertaining the need for treatment when circumstances indicating the necessity of it are brought to the employers attention.
Here the need was notorious. Moreover, treatment was undertaken and supervised by the fire surgeon. Knowing, as it is presumed to know, the exigencies of the petitioner's condition and the necessity for treatment at all times, the silence of the city throughout the seven year period of practically continuous medical and surgical care will be considered as constituting authorization for the petitioner to obtain all treatment which the city was required to furnish in fulfillment of the duty imposed by law.
I regard the silence not as a negative act giving rise to a claim of estoppel, but rather as the affirmative act of giving the petitioner carte blanche in the matter. Cf. Reilly v. City of Newark, 30 N.J. Super. 72 (Cty. Ct. 1954). So it is concluded that the petition was filed within two years of the date of the last treatment furnished by the respondent.
Next it is contended that recovery is precluded by R.S. 34:15-54:
"No petition shall be dismissed for want of prosecution or for failure to formally adjourn the cause, until after notice shall be served by the respondent on the petitioner or his attorney that unless the cause is moved for hearing within one month from the date of *552 the service thereof, the claim will be considered abandoned and the petition dismissed subject, however, to the right to have the petition reinstated for good cause shown, upon application made to the deputy commissioner before whom the matter was heard or to the Commissioner of Labor within one year thereafter. No claim heretofore made shall be considered abandoned because the petition was dismissed under this section, if such petition has been reinstated for good cause shown, and such petition shall be deemed to have been dismissed without prejudice to further proceedings upon said petition, and further proceedings thereon shall be as effective as though said petition had not been dismissed."
The respondent offers the thesis that the failure of the petitioner to have applied for reinstatement of his claim within one year from May 8, 1949, the date of a dismissal of a previous petition for lack of prosecution, resulted in an abandonment not only of the claim therein set forth, but of all rights he had under the act. As a corollary to this it is urged that any treatment thereafter furnished is to be regarded not as payment of compensation, but at most as a gratuitous gesture on the part of the employer.
It is axiomatic that the statute is remedial in character and is to be broadly and liberally construed to effect the beneficent purposes of the Legislature. In Skislak v. Continental Mining & Smelting Corp., 1 N.J. 167 (1948), Justice Oliphant described the very section in question as showing "a legislative intention to give petitioners in compensation cases every reasonable opportunity to have their causes determined on their merits."
The terms in which the statute is cast bespeak this intention. "No petition shall be dismissed * * * until after notice," and "no claim heretofore made shall be considered abandoned because the petition was dismissed * * * if such petition has been reinstated," strongly connote aversion to adverse determination of the claim except upon the merits.
Plainly it was intended that where good cause existed, a petitioner who suffered a dismissal for want of prosecution might have a year to revive his action, even though the revival occurred after the two-year limitation period provided by R.S. 34:15-51.
*553 Thus, there is implied a legislative design to save the claim from destruction in proper circumstances. The approach suggested by the respondent would achieve the opposite effect. If, as it suggests, the right to claim compensation is destroyed by a dismissal for lack of prosecution and the want of a timely application to revive it, one, who having filed a petition shortly after an accident, suffered it to be dismissed for lack of prosecution a few months thereafter, and not having moved for reopening within a year, would find himself debarred from asserting his claim, notwithstanding the fact that the two-year limitation period had not elapsed. This runs contrary to any basic concept of fairness  let alone of liberal statutory construction, and in effect was struck down in Zietko v. Jacques Wolf Co., 23 N.J. Misc. 354, 43 A.2d 881 (W.C.B. 1945), wherein it was held that a dismissal of a previous claim petition for lack of prosecution was not a bar to a subsequent petition for compensation which was filed within the time contemplated by statute.
The holding expressed herein that the present petition was filed within two years of the last date upon which treatment was furnished renders inapplicable the provisions of R.S. 34:15-50, since, for present purposes at least, it deals only with the right of the petitioner to revive his claim at a time subsequent to the running of the two-year limitation period.
This reasoning necessarily deprives of force the final argument of the respondent that the dismissal and failure to reopen within one year thereof extinguished its obligation to the petitioner so that any treatment thereafter may not be construed as having been furnished by constraint of law.
The judgment of the Workmen's Compensation Division is affirmed, and an appropriate judgment, approved as to form, may be submitted.