62 N.J. Super. 232 (1960)
162 A.2d 596
NICHOLAS DE ASIO, PETITIONER-RESPONDENT,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1960.
Decided June 27, 1960.
*235 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Frank J. Ziobro argued the cause for respondent-appellant.
Mr. Aaron Gordon argued the cause for petitioner-respondent (Messrs. Sachs & Sachs, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The only question presented is whether the petition for compensation under the Workmen's Compensation Act was filed within the time prescribed by law. The Deputy Director found that it was not and dismissed the claim petition. The Hudson County Court found that it was and reversed. 58 N.J. Super. 418 (1959). This is an appeal by the respondent from the judgment entered in that court.
Insofar as it is here pertinent, R.S. 34:15-51 provides:
"Every claimant for compensation * * * shall * * * file a petition in duplicate with the secretary of the bureau * * * within two years after the date on which the accident occurred, or in case an agreement for compensation has been made between the employer and the claimant, then within two years after the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been paid by the employer, then within two years after the last payment of compensation." (Emphasis added.)
It is firmly established that the Division of Workmen's Compensation has no jurisdiction to entertain a claim petition filed after the expiration of the time designated in *236 the statute. Valentine v. Walter Kidde & Co., 136 N.J.L. 292 (Sup. Ct. 1947); Bocchino v. Best Foods, Inc., 16 N.J. Super. 154, 157 (Cty. Ct. 1951). The Compensation Bureau is a creature of statute, and its special and limited jurisdiction cannot be inflated by consent, waiver, estoppel, or judicial inclination. Riccioni v. American Cyanamid Co., 26 N.J. Super. 1, 5 (App. Div.), certification denied 13 N.J. 289 (1953).
It is also undoubted that the actual furnishing of medical treatment by the employer is a part payment of "compensation" within the meaning of R.S. 34:15-51, and a claim petition filed within two years of such "payment" is within time. Sampson v. Thornton, 8 N.J. 415, 419 (1952); Schwarz v. Federal Shipbuilding and Dry Dock Co., 16 N.J. 243, 248 (1954). There is a distinction between the furnishing of medical treatment by the employer and the payment by the employer for medical treatment already furnished; it is the date of the last treatment, and not of the employer's payment therefor, that incepts the running of the two-year period. Oldfield v. New Jersey Realty Co., 1 N.J. 63, 65-66 (1948).
The jurisdictional terms of the statute must be given a construction that will comport with the policy prompting its enactment. As stated in Riccioni v. American Cyanamid Co., supra, 26 N.J. Super., at page 6:
"It is manifest that a cogent object of the provision is to prevent employers and their insurers from lulling the injured employee into a false assumption of security and consequential inaction and tardiness by means of voluntary assistance."
The furnishing of medical benefits is held to extend the claim period on the theory that the furnishing of any kind of benefit required by compensation law indicates to the employee an acceptance by the employer of liability for the injury. The objective of the statute is "to protect the claimant who reasonably refrains from making claim because of the receipt of benefits voluntarily supplied." 2 *237 Larson, Workmen's Compensation Law, p. 271, § 78.43(b). On this ground it is held that a mere medical examination to determine causal relation, conducted for the employer's purposes and not to benefit the employee, is not such conduct on the employer's part as to justify the employee's inaction and delay in filing the petition. Schwarz v. Federal Shipbuilding and Dry Dock Co., supra, 16 N.J., at page 250; Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp., 21 N.J. 486, 489 (1956). In circumstances where the employee has been misled, the employer may be estopped from denying that treatments rendered by its physician and agents were furnished by it. Reilly v. City of Newark, 30 N.J. Super. 72, 76-77 (Cty. Ct. 1954).
Under R.S. 34:15-15, the employer is under a positive duty to furnish to the injured workman such medical treatment as shall be necessary to cure and relieve him, within the limitations imposed by that section. For the breach of this statutory duty, the Legislature made express provision, namely, the employer in certain circumstances may be liable to pay for "such treatment and services as may be necessary and as may come within the terms" of R.S. 34:15-15. The Act does not provide as an additional sanction that, if the employer fails to furnish medical treatment after having notice of the injury, it will be estopped from asserting the bar of limitations.
With the foregoing principles in mind, we proceed to determine whether it can be held in this case that there was such a furnishing of medical treatment as to extend the two-year period.
There is little or no substantial dispute as to the material facts involved, and they are set forth at length in the opinion of the County Court, 58 N.J. Super. 418. In brief, the petitioner, a fireman employed by the City of Bayonne, was exposed to water and the elements in subfreezing weather while attending a fire on February 12, 1954. As a result of this exposure, he immediately began to suffer from chills, shivering and coughing. The condition affected his lungs *238 and respiratory system and he was eventually rendered totally and permanently disabled. Viewing the case in the light most favorable to the petitioner, the City of Bayonne was put on notice of the occurrence on the morning following the exposure.
The claim petition was not filed until March 16, 1956, more than two years after the accident and more than two years after March 11, 1954 when the petitioner was first hospitalized.
It is not suggested that at any time within the two-year period or thereafter the City of Bayonne furnished the injured fireman with medical treatment. It is stated in the brief submitted on his behalf that "the city had remained calloused to the necessity for the petitioner's treatment for his injuries over the long period of time by ignoring the necessity for such treatment although the obligation to furnish treatment is statutorily mandatory upon the City of Bayonne * * *." In fact, although the city fire surgeons regularly examined him and were familiar with the progress of his condition, they were specifically prohibited by a standing order of the fire department from treating any fireman for injuries suffered in the line of duty or otherwise. Dr. Louis E. Norwich, the city's police and fire surgeon, testified that if he treated a fireman in violation of the directive, he "would be brought up on charges" and would lose his job. If the fireman accepted treatment, he too would be brought up on charges.
In consequence, the petitioner was treated by physicians of his own choosing who were not affiliated with the City of Bayonne. His hospital and medical expenses were for the most part paid by private insurance plans, to which he and not his employer paid premiums. He received $50 in 1955 and again in 1956 from the Fireman's Relief Association in the City of Bayonne, but, unlike the situation in the City of Newark, there is in Bayonne no connection between the Association and the city. On the date of the last medical treatment, January 10, 1956  the date upon *239 which the County Court held the two-year period to commence to run  the petitioner was treated by his own physician.
Dr. Norwich testified as to the normal procedure when an injury was reported. He would notify the chief of the fire department, the chief would notify the director of public safety, and the director would appoint or designate a physician to treat the injured fireman. When the injury was not reported, no doctor would be designated. In the instant case, the petitioner never requested treatments from the city; he testified he had "never heard" that the city would "pay for the doctor or anything like that."
From the date of the exposure, petitioner received his full salary of $80 per week instead of the fractional benefit of $30 per week he would have been entitled to under the Workmen's Compensation Act. In this regard, the city disputes the contention that it had remained "calloused" toward him.
Petitioner argues, and the County Court found, that in view of the fact that the city was notified of the accident and of the resulting injuries, its silence and failure to act in effect authorized him to obtain all treatment which it was its duty to furnish. 58 N.J. Super., at page 425. The case is said to be controlled by, and the court felt itself bound by, the doctrine of Lynch v. City of Newark, 43 N.J. Super. 546 (Cty. Ct.), affirmed 46 N.J. Super. 335 (App. Div. 1957).
The Lynch case, however, is distinguishable on its facts. There, the injured fireman was taken to a hospital at the direction of the city's fire surgeon. The city-employed physician and others continued to render medical treatment for the 11 months he remained in the hospital. When he was discharged, the doctor told him to "come see me if anything happens." Thereafter an abscess developed, and the employee consulted the fire surgeon again, who referred him to another physician. When the doctor to whom he had been referred retired six years after the accident, the petitioner placed himself under the care of a third physician *240 "who undertook treatment with the authorization of" the city fire surgeon. 43 N.J. Super., at page 549. As the court found, "treatment was undertaken and supervised by the fire surgeon." Id., 43 N.J. Super., at page 551. The case is therefore one in which the employer actually furnished medical treatment. Additionally, it appeared that there had been an understanding between the fireman and city officials to the effect that the compensation claim would not be promptly prosecuted so that the fireman could continue to receive the benefits of full salary. The city's failure for a period of seven years to disavow this arrangement, in part, led to the finding that it had given "the petitioner carte blanche in the matter" of obtaining medical care.
It is nevertheless true that the Lynch decision does express the view that an employer's failure to discharge its statutory duty constitutes authorization to the employee to obtain treatment elsewhere, and that it is in that sense that the employer can be deemed to have furnished medical treatment. To this extent the ruling is not in accord with the apparent conclusion of the Supreme Court, as indicated in the Schwarz case, supra, that only such medical treatment, "which could have been required under the statute," as is "actually furnished by the employer" can be considered "payment of compensation" for purposes of prolonging the inception of the period of limitations. 16 N.J., at page 248. For this reason and because the Lynch doctrine subjects the employer or its insurer to an added liability for conduct not causally related to the delay in the filing of the petition, we are not at liberty to hold that there was a "payment of compensation" on the date of the last medical treatment on the theory it should have been furnished by the employer.
It being undisputed that the employer furnished no medical treatment, that none was ever requested, and that the employer never recognized the illness as a compensable one, the Deputy Director rightly concluded he was without jurisdiction and the judgment of the County Court must be reversed. No costs.