656 A.2d 1300

WALTER MILOS, PETITIONER–APPELLANT, v. EXXON CO., USA, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 16, 1994—Decided May 2, 1995.

Before Judges GAULKIN, BAIME and ARIEL A. RODRÍGUEZ.

*Jerry M. Finn* argued the cause for appellant (*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano,* attorneys).

*Richard V. Jones* argued the cause for respondent (*Bressler, Amery & Ross,* attorneys; *Richard V. Jones* and *Noreen M. Bitetto,* on the brief).

The opinion of the court was delivered by

ARIEL A. RODRÍGUEZ, J.A.D.

In this worker's compensation appeal we must decide whether an employee's participation in an employer-funded, voluntary program to monitor the existence or progression of asbestos-related diseases constitutes medical treatment which extends the jurisdictional limitations period set by *N.J.S.A.* 34:15–27 for an application to review or modify an award (reopener). We hold that it does and reverse the order dismissing the claim.

I

The facts are not in dispute. Walter Milos worked for Exxon Corporation, USA (Exxon) from 1937 until his retirement in 1978.

During his employment he was exposed to dust, fumes, chemicals and asbestos. He has not worked since retiring. In April 1985, seven years after his retirement, Milos filed a claim petition for disability due to asbestos exposure. He was awarded "17½% permanent partial total disability, pulmonary in nature—pleural calcification asbestosis." In May 1987, Milos filed an application for a reopener. The award was modified to 24% permanent partial disability.

Within a few months, Milos began participation in the Exxon Asbestos Surveillance Program (Program). The Program, the result of a collective bargaining agreement with Milos's union, is funded by Exxon. It was designed to monitor current and former Exxon employees who may have been exposed to asbestos for the existence or progression of asbestos-related diseases. Participation is voluntary and not limited to employees who have developed asbestos-related diseases.

Under the Program, Kenneth D. Rosenman, M.D., evaluated Milos's condition in May 1988 and concluded that he was "at risk of developing asbestos related cancers in the future." He recommended that Milos be monitored yearly. Milos underwent monitoring examinations in May 1989, November 1990 and July 1992. Each time, he was advised to continue the monitoring examinations on a yearly basis.

Around the time of the last monitoring examination, Milos was evaluated by his own physician, Susan Daum, M.D. She concluded that his "pulmonary disability [had] increased over [the] previous estimate to 50% of partial total." Milos promptly filed a second claim petition. Exxon moved to dismiss, arguing that pulmonary asbestosis formed the basis of the existing award. The judge ruled that the claim was barred by the doctrine of *res judicata* and, on his own motion, amended the second claim petition to an application for a reopener. The judge then ruled that the reopener was nevertheless barred by the two-year jurisdictional limitation contained in *N.J.S.A.* 34:15–27. The judge rejected Milos's contention, raised again on appeal, that the moni-

toring examinations constitute payments of compensation which extend the limitations period.

## II

■ Under the doctrine of *res judicata*, a cause of action which has been finally determined between the parties on the merits by a tribunal having jurisdiction cannot be re-litigated by those parties in a new proceeding. *Velasquez v. Franz*, 123 *N.J.* 498, 505, 589 *A.*2d 143 (1991). *Res judicata* may form a defense to a workers' compensation petition. *Taylor by Taylor v. Englehard Industries*, 230 *N.J.Super.* 245, 253, 553 *A.*2d 361 (App.Div.1989). Here, the first claim petition, based on pulmonary disability due to exposure to asbestos, was determined on the merits. Therefore, a second claim petition based on a worsening of the same injury, absent additional exposure, is barred. *See Mikitka v. Johns–Manville Products Corp.*, 139 *N.J.Super.* 66, 352 *A.*2d 591 (App. Div.1976).

■ In contrast to the absolute bar that a final determination on the merits has in other fields, the Workers Compensation Act (Act), *N.J.S.A.* 34:15–1 to –128, permits an award to be reviewed and modified. *Yeomans v. Jersey City*, 27 *N.J.* 496, 507–08, 143 *A.*2d 174 (1958). *N.J.S.A.* 34:15–27 provides in pertinent part:

A formal award, determination and rule for judgment or order approving settlement may be reviewed within 2 years from the date *when the injured person last received a payment* upon the application of either party on the ground that the incapacity of the injured employee has subsequently increased.

(emphasis added).

Thus, Milos's application for a reopener is not barred if the monitoring examinations constitute payments within the meaning of *N.J.S.A.* 34:15–27.

■ Generally, medical treatment after a work-related injury paid by an employer is considered a payment of compensation. In *Sa v. H.L. Harrison & Son, Inc.*, 38 *N.J.* 203, 183 *A.*2d 410 (1962), the Supreme Court observed that

[i]t is well established law by judicial construction of the whole compensation act that the furnishing of medical treatment is in the nature of compensation and constitutes a part "payment" thereof.

[38 *N.J.* at 207, 183 *A.*2d 410.]

"[M]edical treatment furnished to the injured employee and paid for by the employer is ordinarily regarded as in effect a partial payment of compensation within the import of the act." *Riccioni v. American Cyanamid Co.*, 26 *N.J.Super.* 1, 4–5, 96 *A.*2d 765 (App.Div.), *certif. denied*, 13 *N.J.* 289, 99 *A.*2d 450 (1953). An examination for diagnostic purposes is also considered treatment and thus payment of compensation. *Pfahler v. Eclipse Pioneer Div. & Bendix Aviation Corp.*, 21 *N.J.* 486, 491, 122 *A.*2d 644 (1956). However, an examination conducted solely for claims evaluation or for the employer's own purposes does not constitute a treatment under the Act. *De Asio v. Bayonne*, 62 *N.J.Super.* 232, 237, 162 *A.*2d 596 (App.Div.), *certif. denied*, 33 *N.J.* 386, 164 *A.*2d 849 (1960).

■ The analysis does not end with those general principles. Where the parties' conduct indicates that the payments or treatments received by an injured employee are not pursuant to a statutory obligation, such voluntary medical benefits will not toll or extend the limitation provisions of the act. *Zanni v. Rudolph Poultry Equipment Co.*, 105 *N.J.Super.* 325, 329, 252 *A.*2d 212 (App.Div.), *certif. denied*, 54 *N.J.* 244, 254 *A.*2d 790 (1969). *See* Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 78.43(f) (1994). It is only "[w]here medical treatment which could have been required under the [workers' compensation] statute is actually furnished by the employer, [that] such treatment is considered [a] 'payment of compensation....'" *Schwarz v. Federal Shipbuilding and Dry Dock Co.*, 16 *N.J.* 243, 248, 108 *A.*2d 417 (1954).

■ Exxon argues that because the monitoring examinations were "not tied to [Milos's] award of workers' compensation benefits," they should be considered a voluntary payment. However, treatment need not be given pursuant to an award in order to qualify as a "payment"; the test is whether the treatment is required under the Act. An employer's obligation to pay for treatments is set by *N.J.S.A.* 34:15–15 which provides,

> The employer shall furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible; ....

Because of the progressive nature of asbestosis, as well as other exposure illnesses, continued evaluation of the disease is "necessary ... to relieve the worker of the effects of the injury." *Ibid.* In many instances the full symptomatology of asbestosis will not manifest itself until several years after exposure. We do not strain the plain meaning of the statute by concluding that the monitoring examinations provided under the Program are a statutory obligation and not a voluntary payment. Thus, the treatment need not have been actually awarded, it need only be statutorily required. It is irrelevant that other employees, who were not suffering from asbestos exposure, also received monitoring examinations. Because such persons are not "injured workers," the monitoring examinations, as applied to them, are not treatment required by statute. In those specific instances the monitoring examinations are a voluntary benefit.

Milos's last monitoring examinations occurred less than two years before the second claim petition, later amended to an application for a reopener, was filed. .Therefore the limitations period contained in *N.J.S.A.* 34:15–27 is extended.

### III

The result that we reach is consistent with the purposes of the Act, which is "to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense." *Morris v. Hermann Forwarding Co.,* 18 *N.J.* 195, 197–98, 113 *A.*2d 513 (1955). Because Milos's disease was caused by his exposure to asbestos at work, his employer should bear the cost of treating him. The Act is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished. *Torres v. Trenton Times Newspaper,* 64 *N.J.* 458, 461, 317 *A.*2d 361 (1974).

■ In conclusion, the monitoring examinations which Milos underwent pursuant to the Program constitute payments within the meaning of *N.J.S.A.* 34:15–27. Therefore, the amended application for a reopener was not time-barred.

Reversed and remanded.