823 A.2d 51

UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CEN-
TER, INC., AND UNIVERSITY OF MASSACHUSETTS GROUP
PRACTICE, PLAINTIFFS–RESPONDENTS, v. MARIO S.
CHRISTODOULOU (DECEASED) BY HIS REPRESENTATIVE
STEVE CHRISTODOULOU, AUTO ACTION LAND, INC., GRAN-
ITE STATE INSURANCE COMPANY, AIG CLAIM SERVICES,
INC., AND GOLDBERGER, SELIGSOHN AND SHINROD, ESQS.,
DEFENDANTS–APPELLANTS,THE TRAVELERS INSURANCE
CO., FITZPATRICK, REILLY, SUPPLE AND GAUL, ESQS., DE-
FENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 25, 2003—Decided April 16, 2003.

Before Judges STERN, COBURN and COLLESTER.

*Robert A. Vort,* argued the cause for appellants Estate of Mario S. Christodoulou (deceased), Steve Christodoulou and Goldberger, Seligsohn and Shinrod (*Pearce, Vort & Fleisig,* attorneys; *Mr. Vort,* on the brief).

*John S. Fitzpatrick,* argued the cause for appellants Auto Action Land, Inc., Granite State Insurance Co. and AIG Claim Services (*Fitzpatrick, Reilly, Supple & Gaul,* attorneys; *Kathleen A. Hart,* of counsel; *Mr. Fitzpatrick,* on the brief).

*Richard Dingle,* argued the cause for respondents (*Doyle & Brady,* attorneys; *Mr. Ringle,* on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

This is a common law action by medical providers for the reasonable value of medical services that were at issue in a workers' compensation case. It also includes a cross-claim by the

compensation petitioner against the compensation respondent for indemnification with respect to the medical bills and for counsel fees in defending against the medical providers' action.

The primary issue is whether the petitioner in a workers' compensation action, which was settled without providing for the payment of medical bills, may be held accountable thereafter at common law by medical providers who failed to intervene in the workers' compensation action despite having received timely notice of its pendency. The other substantive issues are: whether the respondent in that compensation action may be held liable to the unpaid medical providers based on respondent's agreement to hold petitioner harmless from liability for the medical bills; and whether the hold-harmless agreement requires the respondent to reimburse petitioner for his legal fees in defending against the common law action. These issues were presented to the trial court on defense motions for summary judgment. The trial court denied the motions, and we granted the unsuccessful parties leave to appeal. We conclude that the common law action against the workers' compensation petitioner is barred because of the medical providers' failure to intervene, or file their own claim, in a timely manner in the compensation action; that the hold-harmless agreement provides no basis for the medical provider's action against the compensation respondent and its insurance representatives; and that the petitioner is entitled to reimbursement from the compensation respondent for his legal fees in defending this action.

I

Plaintiffs, University of Massachusetts Memorial Medical Center, Inc., and University of Massachusetts Group Practice, provided over $700,000 in medical services to Mario S. Christodoulou ("Mario") for injuries he sustained in a motor vehicle accident. After Mario died as a result of those injuries, his father, defendant Steve Christodoulou ("Steve") filed two petitions with the Division of Workers' Compensation (the "Division"). One petition sought

benefits for Mario's estate, and the other sought benefits for Steve and his wife, Despina, as Mario's dependents. Mario was an unmarried adult, had no children or other possible dependents, and lived with his parents. Plaintiffs received timely notice of the petitions, but failed to intervene in the proceedings or file their own claim petition. The respondent in both cases was Mario's employer, defendant Auto Auction Land, Inc. ("Auto Auction"). Defendant Granite State Insurance Company ("Granite State") was Auto Auction's compensation insurer, and defendant AIG Claim Services, Inc. ("AIG"), was Granite State's claims administrator.

Faced with difficult issues respecting the viability of both compensation claims, the parties resolved their dispute by a settlement that made no provision for payment of plaintiffs' medical bills. Pursuant to the agreement, which was approved by the judge of compensation under *N.J.S.A.* 34:15–20, respondent agreed to pay $50,000 in a lump sum payment and to indemnify petitioner with respect to any future claim for the medical bills. The terms of the indemnity agreement were set out in the following manner in the settlement proceeding. Petitioner's attorney asked petitioner this question: "As part of the settlement I've told you that should any doctor or hospital come against you or as a result of any of the injuries sustained by your son, *the insurance company will protect you,* do you understand that?" (Emphasis added). He replied, "I understand." Respondent's attorney then engaged in the following examination of Steve.

Q. Do you understand that by accepting this settlement that the case is closed forever and neither you nor anyone else from your family can come back into court to try to seek additional monies from Auto Auction Land?

A. Yes, I understand.

Q. You also understand that in the event that there is a claim against you for hospital bills, *the insurance company will protect you* in this matter?

A. Yes I understand.

[Emphasis added.]

This agreement was reflected in the order approving the settlement in the following manner: "Respondent will hold petitioner harmless for any medical or hospital bill arising out of the

accident...." Although Despina did not actively participate in the compensation proceedings, it was obviously intended that she benefit from the settlement to the same extent as Steve.

The settlement of the compensation case occurred on May 10, 1999. Over a year later, plaintiffs filed pleadings in the Division attempting to vacate the settlement and obtain payment of their bills. The judge of compensation denied them relief, and they appealed. In an unreported opinion, we affirmed. *Christodoulou v. Auto Auction Land Inc.*, No. A–2860–00T2 (App. Div. April 10, 2002), *certif. denied*, 174 *N.J.* 191, 803 *A.2d* 1163 (2002). Among other things, we held that these medical providers were barred from obtaining payment in the Division because of their failure to file a timely petition, and were not entitled to be relieved of the effect of that failure under *Rule* 4:50–1.[1] This common law action was filed while that appeal was pending.

## II

We consider first the compensation parties' demand for dismissal of this common law action on the ground that it violates the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128 (the "Act"). As a preliminary matter, we observe as a matter of law that there were actually three petitioners in the compensation action: Steve, Despina, and, in essence, Mario's estate. Although Steve signed the dependency action, he clearly did so on behalf of his wife as well as himself, an informality apparently permitted by the Division. See 3 *Larson, Workers' Compensation*, §§ 124.03–124.04 (Desk Ed.2000), discussing the procedural informality in such matters with respect to the form and substance of pleadings. Steve filed the employee's claim petition for his deceased son in a representative capacity, namely as "such person as would be appointed administrator of the estate of the decedent...."

---

[1] Citation of an unpublished opinion is obviously appropriate in these circumstances. *R.* 1:36–3; *Mantilla v. NC Mall Assoc.*, 167 *N.J.* 262, 267–68, 770 *A.2d* 1144 (2001); *Gottlob v. Lopez*, 205 *N.J.Super.* 417, 421, 501 *A.2d* 176 (App.Div. 1985), *certif. denied*, 104 *N.J.* 373, 517 *A.2d* 384 (1986).

*N.J.S.A.* 34:15–21. We so conclude because there is no evidence of the formal appointment of an administrator or executor of such estate as Mario might have had.

A medical provider may not sue petitioners or respondents at common law while a compensation case is pending. *Medical Diagnostic Assoc. v. Hawryluk,* 317 *N.J.Super.* 338, 347, 722 *A.*2d 122 (App.Div.1998), *certif. denied,* 160 *N.J.* 89, 733 *A.*2d 494 (1999). However, they may file a timely claim petition for the value of services rendered in the Division. *Id.* at 348, 722 *A.*2d 122; *N.J.S.A.* 34:15–15. If the Division rejects the petitioner's claim, or the medical provider's claim, on the merits, the medical provider can then sue the petitioner at common law. *Id.* at 346–47, 722 *A.*2d 122; *West Jersey Health System v. Croneberger,* 275 *N.J.Super.* 303, 308–09, 645 *A.*2d 1282 (App.Div.1994). The statute of limitations on the common law action is tolled for a medical provider who has filed a claim or intervened in the compensation action during its pendency. *Medical Diagnostic,* 317 *N.J.Super.* at 350–51, 722 *A.*2d 122.

Had plaintiffs filed a timely petition in the Division, or intervened in the petitioner's cases, they could have pursued recovery despite the other parties' desire to settle their differences. *Cf. Olivero by Olivero v. New Jersey Mfrs. Ins. Co.,* 199 *N.J.Super.* 191, 198–200, 488 *A.*2d 1071 (App.Div.1985). Having failed to take that action, the question becomes whether the settlement between respondent and the petitioners prohibits the subsequent action at common law.

As noted, the settlement was entered into under *N.J.S.A.* 34:15–20 ("Section 20"), which provides as follows:

> In case of a dispute over or failure to agree upon a claim for compensation between employer and employee, or the dependents of the employee, either party may submit the claim, both as to the questions of fact, the nature and effect of the injuries, and the amount of compensation therefor according to the schedule herein provided, to the Division of Workers' Compensation, as prescribed in article 4 of this chapter (section 34:15–49 et seq.). After a petition for compensation or dependency claims has been filed, seeking compensation by reason of accident, injury or occupational disease of any employee, and when the petitioner is

represented by an attorney of the State of New Jersey, and when it shall appear that the issue or issues involve the question of jurisdiction, liability, causal relationship or dependency of the petitioner under this chapter, and the petitioner and the respondent are desirous of entering into a lump-sum settlement of the controversy, a judge of compensation may with the consent of the parties, after considering the testimony of the petitioner and other witnesses, together with any stipulation of the parties, and after such judge of compensation has determined that such settlement is fair and just under all the circumstances, enter "an order approving settlement." Such settlement, when so approved, notwithstanding any other provisions of this chapter, shall have the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute. Any payments made under this section shall be recognized as payments of workers' compensation benefits for insurance rating purposes only.

Plaintiffs argue, without supporting authority, that a Section 20 dismissal should be treated in the same manner as a judgment of non-compensability, thereby entitling them to pursue a common law action against petitioners. We disagree. Section 20 provides a procedure for settlement of compensation claims by a lump sum payment when the petitioner's right to recovery is in doubt. This form of resolution implies nothing with respect to the viability of the claim. However, it is designed to achieve a complete settlement of all issues for all of the parties concerned. Permitting plaintiffs to pursue this common law action would render the settlement illusory for the parties to the compensation action, an outcome that would be entirely inconsistent with our strong public policy favoring settlement of litigation. *Nolan by Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990). In short, plaintiffs' failure to pursue their administrative remedy in a timely fashion does not entitle them to upset the administrative determination approving the settlement by a subsequent common law action. Therefore the trial court erred in refusing to dismiss the common law action.

### III

We turn next to the meaning and effect of the indemnity agreement with respect to plaintiffs' claim. Without citing any authority, plaintiffs argue that Auto Auction and its insurance

representatives are liable to them because Mario's estate remains responsible for the bills, and that the agreement, though it only mentioned Steve, should be construed as providing indemnification for Mario's estate as well as Steve. Auto Auction contends that the agreement did not cover Mario's estate because it did not refer to that entity.

We construe a contract of indemnity by applying the customary rules governing interpretation of contracts. *Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc.,* 132 *N.J.Super.* 496, 499, 334 *A.*2d 346 (App.Div.1975). Thus, in searching for the intent of the parties, we consider "not only ... the language used, but also ... the surrounding circumstances and the objects sought to be attained by them under their agreement." *Ibid.* Auto Auction emphasizes the wording of the order approving the settlement, which only mentions Steve. But given the context and the questioning of Steve, quoted above, with respect to the effect of the settlement, we have no doubt that the indemnification covered both Despina and Mario's estate, both parties in interest in the compensation action. The settlement resolved all claims. Given the informality of compensation proceedings, we have no doubt that the indemnity agreement should be construed as protecting all of the intended beneficiaries of the settlement. But that does not advance plaintiffs' position because their rights against Auto Auction and its insurance representatives are derivative, depending entirely on the viability of their claims against the petitioners. Since we have held that the common law action against the compensation petitioners is not viable, the indemnity agreement provides no basis for plaintiffs' action against the indemnitors.

IV

The indemnity agreement also governs the cross-claim on behalf of Steve and Mario's estate for reimbursement of their attorney's fees in defending this action. Relying on the wording of the order approving the compensation settlement, Auto Auction and its insurance representatives argue that the indemnity agree-

ment did not cover attorneys' fees. The pertinent language from the order is "Respondent will hold petitioner[s] harmless for any medical or hospital bill arising out of the accident. . . ."

In *Thermoid Co. v. Consol. Prod. Co., Inc.*, 7 *N.J.* 283, 81 *A.*2d 473 (1951), the Court considered the effect and meaning of an almost identical indemnity agreement in a case that had the same essential ingredients as the instant matter, namely a settlement with knowledge that a third party was likely to sue the indemnitee. The indemnitor had agreed that "we will hold you harmless from any such claim. . . ." *Id.* at 289, 81 *A.*2d 473. The Court had no difficulty in finding that language of that nature in those circumstances "contemplated the expenses of defending such a suit. . . ." *Id.* at 290, 81 *A.*2d 473. And in *Bethlehem Steel Corp.,* we approved the general rule that an indemnitee is entitled to recover reasonable attorneys' fees unless the indemnity contract provides otherwise. 132 *N.J.Super.* at 500, 334 *A.*2d 346. Moreover, given the informality of compensation proceedings, the real meaning of this indemnity agreement is better gleaned from the questions put to Steve during the settlement proceeding. He was told that the insurance company would "protect" him. We have no doubt that that broader language, used by counsel for both sides, clearly contemplated that Steve, and those he represented, would be entitled to attorneys' fees if sued. Therefore, we reverse that portion of the order denying summary judgment on this claim, and remand for entry of judgment on liability and for further proceedings establishing the reasonable value of the fees incurred by Steve and the estate in defending this action.[2]

---

[2] At argument, we raised the question of whether the cross-claim for indemnity provided timely and sufficient notice of the demand for counsel fees, and permitted the parties to file supplemental briefs. Since the demand was made at the commencement of the action, and since Auto Auction filed an answer disclaiming any responsibility to provide a defense, we are satisfied that the notice was both timely and sufficient. *Cf. U.S. Wire & Cable Corp. v. Ascher Corp.*, 34 *N.J.* 121, 126–27, 167 *A.*2d 633 (1961).

## V

Having disposed of the substantive issues, we turn our attention to a procedural matter that only involves plaintiffs and defendant Goldberger, Seligsohn & Shinrod ("Goldberger"), the law firm that represented petitioners in the compensation action.

Pursuant to *R.* 4:18–1(c), plaintiffs named Goldberger as a party in this action solely for the purposes of obtaining discovery. Shortly before a scheduled trial date, plaintiffs moved for permission to file a substantive claim against Goldberger, apparently for malpractice. Essentially, or so it would appear, plaintiffs wanted to pursue Goldberger on the ground that it had either misled them or had otherwise failed to protect their claim in the compensation proceedings. Their motion was denied because of the then impending trial date, and no appeal has been taken from that ruling. During the argument on the motions for summary judgment, plaintiffs asked for permission to dismiss their complaint against Goldberger without prejudice. Goldberger argued that the complaint should be dismissed with prejudice. The trial court agreed with plaintiffs, and Goldberger now seeks to reverse the "without prejudice" aspect of the order. Goldberger claims it should not have to face a substantive action because plaintiffs knew all the facts bearing on that claim when they filed their initial suit. Plaintiffs respond that they should not be foreclosed from pursuing their malpractice claim. Neither side has supported their positions with the citation of authority.

The dismissal without prejudice was entered pursuant to *Rule* 4:37–1(b). Under that rule, the court may impose "such terms and conditions as the court deems appropriate." *R.* 4:37–1(b). The main object of this rule is "to protect a litigant where a termination of the proceedings without prejudice will place him in the probable position of having to defend, at additional expense, another action based upon similar charges at another time." *Union Carbide Corp. v. Litton Precision Prods., Inc.,* 94 *N.J.Super.* 315, 317, 228 *A.*2d 99 (Ch.Div.1967). Since Goldberger was

only sued for purposes of discovery, it did not defend against a malpractice claim. Therefore, the dismissal without prejudice would not expose it to another action on similar charges. Consequently, the trial court's ruling was not an abuse of discretion.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.