851 A.2d 636

UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, INC. AND UNIVERSITY OF MASSACHUSETTS GROUP PRACTICE, PLAINTIFFS–APPELLANTS, v. MARIO S. CHRISTODOULOU (DECEASED) BY HIS GUARDIAN AD PROSEQUENDUM; STEVE CHRISTODOULOU; AUTO ACTION LAND, INC.; GRANITE STATE INSURANCE COMPANY; AIG CLAIM SERVICES, INC. AND GOLDBERGER, SELIGSOHN AND SHINROD, ESQS., DEFENDANTS–RESPONDENTS, AND JOHN DOE (SAID NAME BEING FICTITIOUS) AND ABC INSURANCE AGENCY (SAID NAME BEING FICTITIOUS), DEFENDANTS.

Argued January 5, 2004—Decided July 13, 2004.

338

*Richard A. Ringle* argued the cause for appellants (*Doyle & Brady,* attorneys).

*Robert A. Vort* argued the cause for respondents Estate of Mario S. Christodoulou, Steve Christodoulou and Goldberger, Seligsohn, & Shinrod, Esqs. (*Pearce, Vort & Fleisig,* attorneys).

*James F. Supple* argued the cause for respondents Auto Action Land, Inc., Granite State Insurance Company and AIG Claim Services, Inc. (*Reilly, Supple & Wischusen,* attorneys; *John S. Fitzpatrick,* on the brief).

*Steven Stadtmauer* argued the cause for *amici curiae,* Meridian Health System, Saint Barnabas Health System, Hackensack University Medical Center, The Valley Hospital and Englewood Hospital & Medical Center (*Celentano, Stadtmauer & Walentowicz,* attorneys).

Justice ALBIN delivered the opinion of the Court.

The parents of a decedent-employee filed workers' compensation claims against their son's employer. The parents entered into a settlement of those claims with the employer without making any allowance for the payment of their son's medical bills. The hospital and medical group that provided care and treatment to the decedent filed a collection action seeking payment of their bills because they had no advance knowledge of and did not participate in the settlement of the workers' compensation claims. The Law Division found that the hospital and medical group were not bound by the settlement. The Appellate Division found differently and barred the collection action because the medical providers did not intervene timely in the compensation action. We reverse and hold that those medical providers are not bound by a settlement of which they had no notice and to which they were not a party.

## I

We summarize the facts, as we must, in the light most favorable to plaintiffs to determine whether the grant of summary judgment

in favor of defendants was appropriate. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). On June 28, 1996, while driving a car owned by his employer, Auto Auction Land of Jersey City (Auto Auction), twenty-eight-year-old Mario S. Christodoulou was involved in a catastrophic accident on Route I–84 in Sturbridge, Massachusetts. A local rescue squad transported Christodoulou to the University of Massachusetts Memorial Medical Center where he received treatment for multiple, traumatic injuries. He remained hospitalized for almost two months until his death. The hospital and the University of Massachusetts Group Practice (collectively, plaintiffs or the medical providers) provided Christodoulou with medical services at a cost of $712,683.85.

On or about September 28, 1996, Christodoulou's father, Steve, filed with the New Jersey Division of Workers' Compensation (the Division) an employee claim petition on behalf of his son's estate [1] and a dependency claim petition on behalf of himself and his wife, Despina, alleging that the accident occurred in the course of his son's employment with Auto Auction. The hospital was listed as a medical provider on the employee claim petition. The respondent as to both claims was Auto Auction. Defendant Granite State Insurance Company was Auto Auction's compensation carrier, and defendant AIG Claim Services, Inc. was the claims administrator. In its answers to the complaint, Auto Auction disputed that the accident occurred in the course of employment and that Mario Christodoulou was providing support to his parents. Thereafter, in an exchange of correspondence between plaintiffs' in-house Massachusetts attorney, Peter V. Kent, and Steve Christodoulou's attorneys, Goldberger, Seligsohn and Shinrod (Goldberger), Kent

---

[1] As the Appellate Division noted, "there is no evidence of the formal appointment of an administrator or executor of such estate as Mario might have had." *Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou,* 360 *N.J.Super.* 313, 319, 823 *A.*2d 51 (2003). "Steve [Christodoulou] filed the employee's claim petition for his deceased son in a representative capacity, namely as 'such person as would be appointed administrator of the estate of the decedent....' " *Id.* at 318, 823 *A.*2d 51.

was led to believe that the medical providers' bills would be presented for payment in the workers' compensation action.

On April 2, 1997, Kent wrote to Goldberger and requested that Goldberger advise him when the workers' compensation case was expected "to be heard or settled." Kent also forwarded to Goldberger the medical bills related to the services rendered to Mario Christodoulou. By letter dated June 3, 1998, Goldberger informed Kent that plaintiffs' "bills have been noted and will be presented to the Court at the time of the Hearing," and that a representative of the hospital likely would have to appear at the hearing. On October 28, 1998, Kent made a follow-up inquiry with Goldberger concerning the status of the case. Two days later, Goldberger responded that the case would soon be listed for trial and that a representative of the medical providers would have to testify to the nature of the services rendered and the reasonableness of the bills. On November 2, 1998, the Christodoulous and Auto Auction signed a pretrial memorandum that listed plaintiffs' outstanding medical bills.

On May 10, 1999, at a hearing before a workers' compensation court judge pursuant to *N.J.S.A.* 34:15–20 (Section 20), Steve Christodoulou settled both the employee and dependency claims in exchange for a $50,000 lump-sum payment from Auto Auction. The settlement was placed on the record. Steve Christodoulou acknowledged to the court that he was entering into the settlement because of the great difficulty he would face in proving his claims. He also acknowledged his understanding that after dismissal of the claims he would have no further recourse against Auto Auction except in one respect: to seek indemnification against Auto Auction for payment of his son's medical bills. On the record, in the presence of Auto Auction's lawyer, Goldberger assured his client, Steve Christodoulou, that, as part of the settlement, Auto Auction's insurance carrier would "protect" him in the event of a lawsuit by a doctor or hospital seeking payment of medical bills for services rendered to his son as a result of the accident. The workers' compensation court judge signed the

"Order Approving Settlement With Dismissal," which memorialized the "settlement between the parties" and provided that "Respondent (Auto Auction) will hold petitioner (Steve Christodoulou) harmless for any medical or hospital bill arising out of the accident of 6/28/96." Plaintiffs were not given notice of the settlement discussions or the Section 20 hearing, and they did not participate in or approve of the settlement.

By letter dated August 9, 1999, Goldberger informed plaintiffs' lawyer, Kent, of the Section 20 settlement and the dismissal of the Christodoulou compensation claims, stating:

> Due to a serious question of liability, we entered into a Dismissal of the matter pursuant to Section 20 of the New Jersey Workers' Compensation Act.
>
> However, your clients['] rights have been preserved in that the Dismissal specifically provided that the AIG Claim Services would hold the Petitioner harmless, for any medical and hospital bill arising out of the accident in question.
>
> Should you desire to proceed to collect any of the outstanding bills, I suggest that you immediately contact the AIG Claim Services.

Plaintiffs did as directed and forwarded their bills to AIG for payment. On March 29, 2000, counsel for AIG, James Supple, refused plaintiffs' demand for payment. Supple claimed that AIG had agreed to hold Steve Christodoulou harmless—not his son's estate—for payment of the medical bills, and because the father was not responsible to pay the bills of his son, AIG "decline[d] to reimburse" the medical providers. In August and October 2000, plaintiffs filed motions in the workers' compensation court, seeking (1) permission to present their unpaid bills for payment, and (2) a *Rule* 4:50–1 vacation of the order approving the Section 20 settlement. On January 8, 2001, the court denied both motions because plaintiffs had not filed a timely petition for relief. In an unpublished decision, the Appellate Division affirmed. On July 16, 2002, we denied certification. 174 *N.J.* 191, 803 *A.2d* 1163 (2002).

On March 16, 2001, plaintiffs filed a complaint in the Law Division against Mario S. Christodoulou (deceased), by his Guardian Ad Prosequendum, and Steve Christodoulou (collectively, the Christodoulous), Auto Auction, Granite State Insurance Company, and AIG Claim Services, Inc. to recover the cost of medical

services provided to Mario Christodoulou, and against the law firms representing the Christodoulous and Auto Auction "for discovery purposes only." [2] The Christodoulous cross-claimed against Auto Auction, as well as their compensation insurers, for enforcement of the hold-harmless provision in the Section 20 settlement, and for counsel fees and costs. Auto Auction and its law firm cross-claimed against the Christodoulous and their law firm for contribution, indemnification, counsel fees, and costs.

On October 9, 2002, the Law Division dismissed without prejudice plaintiffs' claims against the law firms representing the Christodoulous and Auto Auction, and denied all other motions for summary judgment and dismissal. The court concluded that genuine issues of material fact precluded summary judgment as to each party.

The Appellate Division granted the Christodoulous and Auto Auction leave to appeal from the denial of their summary judgment motions to dismiss plaintiffs' common law collection action and found that the trial court had erred by denying those motions. *Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou,* 360 *N.J.Super.* 313, 320, 823 *A.*2d 51 (2003). The appellate panel held that plaintiffs were required to seek recovery of their medical bills by filing a timely petition in the Division of Workers' Compensation or by intervening in the Christodoulous' workers' compensation action. *Id.* at 316, 319–20, 823 *A.*2d 51. The panel reasoned that had plaintiffs done so, "they could have pursued recovery despite the other parties' desire to settle their differences." *Id.* at 319, 823 *A.*2d 51. The panel found that a Section 20 settlement "is designed to achieve a complete settlement of all issues for all of the parties" and that permitting a common law collection action "would render the settlement illusory for the parties to the

---

[2] Plaintiffs also named Travelers Insurance Company, Auto Auction's fleet/PIP carrier, as a defendant. The Law Division granted Travelers' motion for summary judgment on statute-of-limitations grounds on March 15, 2002. That decision was not part of the appeal below.

compensation action." *Id.* at 320, 823 *A.*2d 51. Accordingly, the panel dismissed plaintiffs' collection action. *Ibid.*

The Appellate Division also determined that in the Section 20 agreement, Auto Auction and its compensation carriers agreed to hold harmless and, therefore, to indemnify both Steve and Despina Christodoulou and Mario Christodoulou's estate in the event of a lawsuit or judgment arising from a collection action for the cost of Mario's medical care. *Id.* at 321, 823 *A.*2d 51. Because the panel held that plaintiffs' common law action was barred, the indemnity agreement did not come into play with regard to payment of the medical bills. *Ibid.* However, the court did conclude that the hold-harmless agreement obligated Auto Auction to pay the reasonable attorneys' fees incurred by Steve and Despina Christodoulou and Mario Christodoulou's estate in defending against the collection action. *Id.* at 322, 823 *A.*2d 51.

Plaintiffs petitioned for review of the Appellate Division's dismissal of their collection action. We granted certification. 177 *N.J.* 571, 832 *A.*2d 322 (2003). We also granted the motion of Meridian Health System, the Saint Barnabas Health System, Hackensack University Medical Center, The Valley Hospital, and Englewood Hospital and Medical Center to appear as *amici curiae.* There was no cross-petition filed requesting review of the Appellate Division's ruling on the application of the hold harmless agreement. We now reverse the Appellate Division and reinstate plaintiffs' cause of action for recovery of their medical bills.

## II.

### A.

Under the New Jersey Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128 (the Act), an employer is required to provide necessary medical treatment to a worker injured in the course of employment. *N.J.S.A.* 34:15–15; *see also Med. Diagnostic Assocs. v. Hawryluk,* 317 *N.J.Super.* 338, 343, 722 *A.*2d 122 (App.Div.1998), *certif. denied,* 160 *N.J.* 89, 733 *A.*2d 494 (1999);

*Benson v. Coca Cola Co.*, 120 *N.J.Super.* 60, 66, 293 *A.*2d 395 (App.Div.1972); *De Asio v. Bayonne*, 62 *N.J.Super.* 232, 237, 162 *A.*2d 596 (App.Div.), *certif. denied*, 33 *N.J.* 386, 164 *A.*2d 849 (1960). The Act mandates that the injured employee first request that the employer furnish medical treatment and services, thus allowing the employer to select a medical provider of its choice. *N.J.S.A.* 34:15–15; *see also Benson, supra,* 120 *N.J.Super.* at 64–65, 293 *A.*2d 395. However, there are circumstances when prior notification of the employer is not possible, as in the case of an unforeseen, out-of-state medical emergency that necessitates immediate medical treatment. *N.J.S.A.* 34:15–15; *see also Med. Diagnostic Assocs., supra,* 317 *N.J.Super.* at 343, 722 *A.*2d 122. In a situation such as the one presented in this case, if the employer refuses to cover the medical expenses incurred by the injured worker, the worker must file a claim petition seeking payment in the Division. *N.J.S.A.* 34:15–15; *see also Med. Diagnostic Assocs., supra,* 317 *N.J.Super.* at 344, 722 *A.*2d 122. To be entitled to payment of his medical bills, the employee must have suffered a compensable injury—an injury "arising out of and in the course" of employment. *N.J.S.A.* 34:15–7. In addition, the medical services received by the employee must be necessary for treatment of the injury, and the fees for such services must be reasonable. *N.J.S.A.* 34:15–15. If the workers' compensation court finds the injury compensable and the medical services reasonable and necessary, the employer is responsible for the expenses incurred by the employee for the treatment of the injury. *N.J.S.A.* 34:15–15.

### B.

The Workers' Compensation Act also permits a health care provider to file a petition in order to assert its claim for payment for medical services rendered to an injured employee or to intervene in a pending workers' compensation action. *N.J.S.A.* 34:15–15; *N.J.A.C.* 12:235–3.10(a)3. *N.J.S.A.* 34:15–15 provides that an employer is not liable for the costs of services rendered by a

physician or other medical care provider "unless the injured worker or *the worker's physician who provides treatment,* or any other person on the worker's behalf, shall file a petition with the Division of Workers' Compensation stating the need for" such services. (Emphasis added.) The Act, therefore, gives the medical provider an independent basis to pursue payment from the employer for treatment of an employee's work-related injury. *N.J.S.A.* 34:15–15; *see also Stafford v. Pabco Prods., Inc.,* 53 *N.J.Super.* 300, 305, 147 *A.*2d 286 (App.Div.1958). In most cases, that remedy will be illusory without the cooperation of the employee, who likely will be the essential witness in proving compensability. Moreover, if an injured employee has initiated a compensation claim, *N.J.A.C.* 12:235–3.10(a)3 permits the medical provider to "intervene by motion in [the] pending case, to seek payment or assert a lien."

■■■ With certain limited exceptions, the Workers' Compensation Act is the exclusive remedy for an employee who suffers a work-related injury. *N.J.S.A.* 34:15–7, –8. The Act, however, does not purport to establish an exclusive remedy for a hospital or physician that, pursuant to a contract, has provided medical services to a patient who may or may not have suffered a job-related injury. *See W. Jersey Health Sys. v. Croneberger,* 275 *N.J.Super.* 303, 307–08, 645 *A.*2d 1282 (App.Div.1994). Although the Act grants the medical provider a statutory basis for seeking payment from an *employer* when it has rendered services to an injured worker, *N.J.S.A.* 34:15–15, *Stafford, supra,* 53 *N.J.Super.* at 305, 147 *A.*2d 286, it does not nullify the contractual right of the provider to seek payment directly from the *employee,* the beneficiary of the services, *W. Jersey Health Sys., supra,* 275 *N.J.Super.* at 307, 645 *A.*2d 1282.

■■■ Nothing in the Act suggests that a medical provider must file a petition in the Division of Workers' Compensation or intervene in a pending action in order to preserve its right to a contractual remedy against a patient whose treatment arose from a work-related injury. Otherwise, every physician who rendered

such treatment would be required to pursue relief independently in the Division in every case, even though medical bills customarily are submitted by the employee in the compensation action. *See, e.g., N.J.A.C.* 12:235–14.1; Form WC–365, Employee's Claim Petition (proscribed form of claim petition designed to be submitted by injured employee, as petitioner); Form WC–101, Notice of Motion for Temporary And/Or Medical Benefits (proscribed form designed for submission of bill for services and report of treating physicians and/or institutions to be submitted by attorney for injured employee, as petitioner). We see no salutary purpose in imposing such a burden on medical providers who reasonably believe that their bills will be processed in the compensation hearing. The burden must rest with the injured employee who has a powerful incentive to take the necessary steps to collect payment for his medical bills from the employer. An employee who does not list in his compensation claim petition his medical bills related to the treatment of a work-related injury does so at his peril.

## C.

N.J.S.A. 34:15–20 allows an employee and employer in a contested workers' compensation case to enter into a lump-sum settlement with the approval of the compensation court to resolve an "issue or issues involv[ing] the question of jurisdiction, liability, causal relationship or dependency." After considering the employees testimony and that of any other witness, along with any stipulation between the parties, the court must determine whether the "settlement is fair and just under all the circumstances." *N.J.S.A.* 34:15–20. If it does so, the court enters an "order approving settlement." *Ibid.* (internal quotation marks omitted). A Section 20 settlement has "the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute." *Ibid.* Section 20 is a

settlement mechanism available to the employee, the employees dependents, and the employer to avoid a hearing on contested issues and to provide the parties with the security of a certain outcome.

There is no language in Section 20 or its legislative history that suggests that medical providers who do not participate in settlement negotiations or agree to a settlement surrender their contractual rights to payment for services rendered to an employee. *See N.J.S.A.* 34:15–20; *see also L.* 1979, *c.* 283, 8; Senate Labor, Industry and Professions Committee, *Joint Statement to Senate Committee Substitute for Senate No. 802 and Assembly Committee Substitute for Assembly No. 840,* at 2 (Nov. 13, 1979). The employee decides whether to negotiate towards a settlement and to the terms of any settlement. It is within the power of the employee either to provide for the payment of outstanding medical bills in a Section 20 settlement or to pursue a hearing to compel an employer to assume responsibility for those payments. The employer and the employee, however, cannot extinguish the rights of those who do not participate, or do not have the opportunity to participate, in a settlement. *Cf. Kibble v. Weeks Dredging Constr. Co.,* 161 *N.J.* 178, 194–95, 735 *A.2d* 1142 (1999) (holding that consent of workers dependents must be obtained for Section 20 settlement that purports to waive dependency benefits); *Hetherington v. Briarwood Coachlight,* 253 *N.J.Super.* 484, 489, 602 *A.2d* 292 (App.Div.1992) (holding that consent of PIP insurer must be obtained for Section 20 settlement that compromises insurers claim for reimbursement).

### III.

The Appellate Division concluded that plaintiffs were required to pursue an administrative remedy by either filing a petition to seek reimbursement or moving to intervene in the Christodoulou compensation action and that plaintiffs could not seek relief on a contract action in the Law Division. *Christodoulou, supra,* 360 *N.J.Super.* at 316, 320, 823 *A.2d* 51. The appellate

panel reached that conclusion despite the multiple representations made by the Christodoulous' counsel to plaintiffs' counsel that the medical bills would be submitted to the compensation court for payment. The panel was concerned primarily with ensuring finality of the Section 20 settlement, which was "designed to achieve a complete settlement of all issues for all of the parties concerned." *Id.* at 320, 823 *A.*2d 51. We do not agree that plaintiffs, who were not parties to the workers' compensation proceeding, to the settlement negotiations, or to the Section 20 settlement, are bound by an agreement to which they were strangers. *See Nolan ex rel Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990) ("A settlement agreement *between parties to a lawsuit* is a contract.") (emphasis added); *see also* 15A *C.J.S. Compromise & Settlement* § 43 (2002) ("A valid compromise agreement binds the parties to it and those in privity with them or claiming under them with notice, but it is not binding on persons not parties to the settlement or in privity with a party."). We hold that the Section 20 settlement only resolves issues between those who were parties to the agreement. Because plaintiffs are not bound by the Section 20 settlement, they are not precluded from enforcing their contractual rights to payment for the medical services rendered to Mario Christodoulou.

█ Plaintiffs relied on the repeated representations of the Christodoulous' attorney that the bills for plaintiffs' medical services would be presented to the compensation court. In light of those representations, we cannot find that plaintiffs acted unreasonably by not filing their own petition or by not intervening by motion in the compensation action. The Christodoulous did not advise plaintiffs of the settlement discussions or the date of the Section 20 hearing, and assigned no portion of the settlement to pay their son's medical bills. Having lulled plaintiffs into believing that their bills would be presented for payment in the compensation court when they knew otherwise, the Christodoulous cannot now be heard to argue that plaintiffs' only forum for relief was in the Division of Workers' Compensation. *Knorr v. Smeal,* 178 *N.J.*

169, 178, 836 A.2d 794 (2003) (stating that estoppel may be invoked when necessary "to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment") (citing *Mattia v. N. Ins. Co. of N.Y.*, 35 N.J.Super. 503, 510, 114 A.2d 582 (App.Div.1955)).

At the time of the Section 20 settlement, the parties to that agreement did not act under the belief that the contractual rights of plaintiffs were extinguished by the settlement. This is evident because in the "Order Approving Settlement," Auto Auction agreed to hold Steve Christodoulou "harmless for any medical or hospital bill arising out of the accident." Moreover, the Christodoulous' attorney wrote to plaintiffs' attorney, Kent, that plaintiffs' "rights have been preserved" and that Kent should "proceed to collect" the outstanding bills from AIG, the claim processor for Auto Auction's compensation carrier. When Kent sought to collect, AIG's counsel took the position that the hold-harmless agreement extended only to Steve Christodoulou, not to his son's estate, and refused to reimburse plaintiffs. At that time, no one posited that plaintiffs lost their contractual right to seek reimbursement for their medical bills as a result of the settlement. Not one word placed on the record at the Section 20 settlement hearing or in the settlement order suggested that plaintiffs' contractual rights were extinguished. The Christodoulous and AIG basically pointed fingers at one another as to who was responsible for the medical bills.

We disapprove of language in lower court decisions stating that a common law collection action by a medical provider can be filed only after a judgment of non-compensability has been rendered in the compensation court. *See, e.g., Christodoulou, supra,* 360 N.J.Super. at 319, 823 A.2d 51; *W. Jersey Health Sys., supra,* 275 N.J.Super. at 308–09, 645 A.2d 1282 (citing *Kinley Physical Therapy Servs., Inc. v. Kramer,* 256 N.J.Super. 355, 359, 606 A.2d 1163 (Law Div.1992)); *Med. Diagnostic Assocs., supra,* 317 N.J.Super. at 346, 349, 722 A.2d 122; *Kinley, supra,* 256 N.J.Super. at 359, 606 A.2d 1163. The notion that a medical provider

cannot file a collection action in the absence of a determination of non-compensability originated in the Law Division case of *Kinley, supra,* which cited no support for that proposition. 256 *N.J.Super.* at 359, 606 *A.*2d 1163. We too are unable to find support for that rule, either in the Workers' Compensation Act itself or in case law interpreting it. Requiring a determination of non-compensability would not permit a common law collection action in the circumstances of this case. Moreover, we can envision scenarios in which a medical provider, after rendering services to a patient, forwards billing invoices to that patient's address unaware of a pending workers' compensation action. Surely, if the injured employee fails to submit those bills for payment in a compensation hearing or fails to account for them in a Section 20 settlement, principles of fairness would dictate that the medical provider not be precluded from filing a common law collection action against its patient despite the absence of a judgment of non-compensability.

The Appellate Division found that permitting plaintiffs to pursue a claim for payment in the Law Division "would render [the Section 20] settlement illusory for the parties to the compensation action, an outcome ... entirely inconsistent with our strong public policy favoring settlement of litigation." *Christodoulou, supra,* 360 *N.J.Super.* at 320, 823 *A.*2d 51 (citing *Nolan ex rel Nolan, supra,* 120 *N.J.* at 472, 577 *A.*2d 143). We disagree. Our holding will encourage the parties to address the payment of medical and hospital bills when negotiating a settlement. Because the employee's contractual obligation to pay for medical services rendered will not be extinguished by a settlement, the employee will have an incentive to arrange for payment of the bills in the settlement or to present them in a compensation proceeding in order to obtain payment from his employer. To the extent that a common law collection action allows a medical provider to proceed only against the employee, a medical provider also will have an incentive to intervene in a pending workers' compensation action to proceed against the potential deep pockets of the employer and its insurer.

 One of the goals of the Workers' Compensation Act is to secure for the parties an effective, fair, and inexpensive procedure. *See Cureton v. Joma Plumbing & Heating Co.,* 38 *N.J.* 326, 331, 184 *A.*2d 644 (1962); *E.I. DuPont De Nemours Powder Co. v. Spocidio,* 90 *N.J.L.* 438, 443, 101 *A.* 407 (1917). That objective would be thwarted by a requirement that medical providers obtain legal representation to file claim petitions or intervene in all pending workers' compensation cases out of fear that the injured worker will settle without providing for payment of their bills. *Amici* point out that hospitals and other medical providers are not equipped or required to collect the type of information needed to prosecute successfully a workers' compensation claim. On the other hand, an injured employee will know his employment status and the details concerning a work-related injury. To compel unnecessarily the intervention of medical providers in every workers' compensation case would be a spectacularly wasteful expenditure of resources and effort.

 We find that the rule adopted by the Appellate Division that a medical provider may not maintain a collection action in the Law Division against an employee who has a pending workers' compensation claim is consistent with the goal of handling claims efficiently and avoiding duplication of efforts. *See, e.g., Med. Diagnostic Assocs., supra,* 317 *N.J.Super.* at 347–49, 722 *A.*2d 122. A necessary corollary to that rule is the requirement that while an employee's claim for a work-related injury is pending in the Division, a medical provider's action for unpaid services must be transferred from the Law Division to the Division of Workers' Compensation. *Id.* at 349, 722 *A.*2d 122. We endorse those practices, which are consistent with our ruling today. It is certainly preferable to have all related issues resolved in a single proceeding whenever feasible.[3]

---

[3] We do not reach the issue of whether a medical provider, who has actual knowledge of a pending workers' compensation proceeding and that its bills will not be presented for payment, would have a duty to intervene or could wait until the compensation proceeding had concluded before pursuing a common law

 Finally, we note that a rule barring a hospital and medical group from bringing a common law collection action against an employee who enters into a settlement without providing for payment of medical bills is inconsistent with public policy and notions of fairness. A requirement that medical providers intervene or file a claim petition in every pending workers' compensation proceeding in order to protect their contractual right to payment will entail additional collection costs for medical providers that will likely result in higher costs for patient care, and may also have the unintended effect of discouraging medical providers from providing care for injured employees. Such a result would be inconsistent with the broad remedial objectives of the Workers' Compensation Act.

## IV.

We reverse the Appellate Divisions holding that plaintiffs collection action is barred because of plaintiffs failure to intervene or file their own claim in the Division of Workers Compensation. We reinstate the complaint, and remand to the Law Division for further proceedings consistent with this opinion.

*For reversal/reinstatement/remandment*—Chief Justice PORITZ and Justices VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—6.

*Opposed*—None.

collection action. Nor do we address the scenario in which an injured employee contracts with a medical provider for a fee for services that a workers' compensation court later deems to be unreasonable under the Act. We do not pass on whether the medical provider under those circumstances is bound by that determination.